NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3906-11T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUSTIN A. LEE,

    Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| October 27, 2014 |
| APPELLATE DIVISION |

Submitted September 22, 2014  -  Decided October 27, 2014

Before Judges Sabatino, Guadagno, and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 10-09-2276.

Joseph E. Krakora, Public Defender, attorney for appellant (Lon Taylor, Assistant Deputy Public Defender, of counsel and on the brief).

Carolyn A. Murray, Acting Essex County Prosecutor, attorney (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Defendant Justin A. Lee applied for admission to the pretrial intervention ("PTI") program after he was charged with two counts of aggravated assault with respect to a police officer and

resisting arrest.[1]  His application was rejected by the Essex County Prosecutor, despite having a positive recommendation by the Judiciary's PTI program director.  The trial court initially remanded the matter to the prosecutor for reconsideration, which resulted in the prosecutor abiding by her original decision to deny PTI and providing amplified written reasons for the denial. After hearing further oral argument, the trial court ultimately deferred to the prosecutor's discretion and upheld the PTI denial.

On appeal, defendant raises several novel legal arguments that he did not raise in the trial court.  In particular, he contends that PTI Guideline 3(i) in Rule 3:28, which expresses a presumption against PTI where the defendant's offense was "deliberately committed with violence or threat of violence against another person," is inconsistent with and preempted by the PTI statute, N.J.S.A. 2C:43-12(e).  Defendant further contends, as a matter of first impression, that because he disputed the police officers' factual account of the incident and provided written eyewitness statements supporting his competing version, the judge reviewing the PTI denial was obligated to address the discrepancy by conducting an evidentiary hearing.  Defendant also argues that the PTI denial in this case must be reversed because

---

[1] The indictment also named a co-defendant, who is not a party to this appeal, and charged him with different crimes.

2

the prosecutor engaged in a "patent and gross abuse of discretion." State in re V.A., 212 N.J. 1, 23 (2012). For the reasons that follow, we affirm.

I.

The record indicates that defendant was on the streets of Bloomfield at about 7:40 p.m. on April 29, 2010, when approximately thirty young men and women were taking part in or observing a melee. During the course of the melee, a young woman was stabbed with a knife, although it is not alleged that defendant himself owned or held the knife at any point. Police officers responded to the scene. Defendant attempted to walk away. He did not heed warnings from the officers directing him to stand with several other persons up against a fence.

Although the facts at this critical point in the chronology are disputed, it appears that several officers and defendant then engaged in a struggle, leading to one of the officers sustaining a broken nose. The police maintain that defendant deliberately struck the officer's nose with the back of his head. Conversely, defendant contends that one of the officers pulled him back by his dreadlocks, causing his head to bash into that officer's nose.

In support of his version of the facts, defendant presented notarized typed statements from two alleged eyewitnesses, as well as his own signed handwritten statement. The eyewitnesses both

3

stated that defendant had been approached by the police from behind after he had failed to respond to the police officers' commands. However, neither eyewitness explicitly confirmed defendant's central claim that the police officer's broken nose had been self-inflicted.

At the time of the incident, defendant was twenty years old. He is a high school graduate, employed, and apparently not affiliated with any gangs. He has no prior adult convictions.

After being charged in the indictment, defendant applied for PTI. As we have already noted, the court's PTI program director recommended him for admission. Even so, the county prosecutor denied his PTI application in a January 14, 2011 letter. That initial denial letter mainly focused on the violent nature of defendant's alleged conduct in resisting the police at the scene and in injuring an officer. In particular, the prosecutor relied on PTI Guideline 3(i), which prescribes that "[i]f the crime was . . . deliberately committed with violence or threat of violence against another person[,] . . . the defendant's application should generally be rejected." See Guidelines for Operation of PTI in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guideline 3(i) to R. 3:28 at 1169 (2015).

Defendant sought review of the initial PTI rejection by the trial court. After oral argument, Judge Michelle Hollar-Gregory

4

issued a letter opinion on May 6, 2011, remanding the PTI request back to the prosecutor for reconsideration. In that letter opinion, the judge found that the prosecutor's initial rejection letter lacked the necessary specificity, and also did not sufficiently discuss certain potential mitigating factors.

After reexamining the matter, the prosecutor reached the same conclusion in a June 17, 2011 supplemental letter rejecting defendant for PTI a second time. Once again, the prosecutor stressed the violent nature of the street encounter and defendant's refusal to heed the repeated commands of several officers.

Following additional argument, Judge Hollar-Gregory issued a final ruling on October 25, 2011, upholding the prosecutor's denial of PTI. In her oral decision, the judge observed that the prosecutor had "addressed the concerns that this [c]ourt [previously] had," concerning the previous PTI denial. The judge also noted the statutory presumption in PTI Guideline 3(i), which relates to cases of alleged violent conduct. On the whole, the judge concluded that the prosecutor's rejection, as amplified in her second letter, did not represent a "patent and gross abuse of discretion."

Defendant subsequently entered into a plea agreement with the State, automatically preserving through Rule 3:28(g) his right to appeal the trial court's decision ratifying the PTI denial.

5

Pursuant to the agreement, defendant pled guilty to third-degree resisting arrest, <u>N.J.S.A.</u> 2C:29-2(a)(3)(a), in exchange for the dismissal of the assault charges and the State's recommendation to have him receive a probationary sentence. The trial court sentenced defendant to one year of probation, which presumably has now been served.

II.

On appeal, defendant makes several legal arguments for the first time concerning the applicable PTI standards and the process for judicially reviewing a prosecutor's PTI determination. He also contends that, given the particular factual circumstances here, the prosecutor abused her discretion in denying him PTI.

More specifically, defendant raises these points in his brief:

<u>POINT I</u>

SINCE THE PTI STATUTE, <u>N.J.S.A.</u> 2C:43-12, DOES NOT PROVIDE FOR A PRESUMPTION AGAINST PTI ADMISSION BASED UPON A "VIOLENT" OFFENSE, GUIDELINE 3(i) OF [<u>RULE</u>] 3:28 IS PREEMPTED BY THE STATUTE AND IS INVALID. (not raised below)

<u>POINT II</u>

SINCE THE PROSECUTOR'S RECONSIDERATION DECISION STILL FAILED TO PROPERLY ASSESS RELEVANT PTI FACTORS — EVEN ASSUMING THE VIABILITY OF THE PRESUMPTION AGAINST ADMISSION, THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION AFFIRMING THE PTI DENIAL.

6

POINT III

CONTRARY TO THE TRIAL COURT'S DECISION
AFFIRMING THE PTI DENIAL, A COURT HAS
AUTHORITY TO CONSIDER FACTUAL DISPUTES,
ESPECIALLY IF THOSE DISPUTES ARE MATERIAL TO
THE PTI DECISION.

POINT IV

SINCE THE PTI STATUTE, N.J.S.A. 2C:43-12, DOES
NOT DIFFERENTIATE BETWEEN THE AUTHORITY OF THE
"PROGRAM DIRECTOR" AND THE PROSECUTOR IN
MAKING PTI ASSESSMENTS, THE STANDARD OF REVIEW
OF A PROSECUTORIAL VETO OVER THE PROGRAM
DIRECTOR'S GRANT OF ADMISSION SHOULD BE AN
"ABUSE OF DISCRETION" STANDARD, RATHER THAN
THAT OF "GROSS AND PATENT ABUSE OF
DISCRETION." (not raised below)

Before commenting on these points[2], we make several preliminary observations. PTI is "a discretionary program diverting criminal defendants from formal prosecution." State v. Caliguiri, 158 N.J. 28, 35 (1999). Admissions into PTI are governed both by statute, N.J.S.A. 2C:43-12(a)—(j), and Guidelines accompanying a court rule, R. 3:28. See Pressler & Verniero, supra, Guideline 1 to R. 3:28 at 1166-67.

Admission into PTI is "a quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996). In carrying out this function, prosecutors are guided by a number of

---

[2] We shall discuss the points raised in a different order than presented in defendant's brief.

different principles. Primarily, prosecutors are required to consider the seventeen factors listed under N.J.S.A. 2C:43-12(e).[3] "[U]nless and until a defendant demonstrates the contrary, our judges must presume that all relevant factors were considered and weighed prior to a prosecutorial veto." State v. Bender, 80 N.J. 84, 94 (1979).

As we have already noted, PTI Guideline 3(i) specifies that an application for PTI should "generally be denied" in instances where a defendant "deliberately commit[s]" an offense "with violence or threat of violence against another person[.]" Pressler

---

[3] The seventeen factors include, among other things:

(1) The nature of the offense;
(2) The facts of the case;
(3) The motivation and age of the defendant;
. . . .
(7) The needs and interests of the victim and society;
. . . .
(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;
. . . .
(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;
. . . . ; and
(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

[N.J.S.A. 2C:43-12(e).]

8

& Verniero, supra, Guideline 3(i) to R. 3:28 at 1169. In the instances where what has been described as this "presumption" against PTI applies, the applicant must show, as the Guidelines instruct, "compelling reasons justifying the applicant's admission and establishing that a decision against enrollment would be arbitrary and unreasonable." Ibid. These compelling reasons must consist of "something extraordinary or unusual, something 'idiosyncratic' in [the defendant's] background." State v. Nwobu, 139 N.J. 236, 252 (1995) (citation omitted).

The scope of judicial review of PTI decisions is "severely limited[,]" and interference by reviewing courts is reserved for those cases where needed "to check [] the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting State v. Leonardis, 72 N.J. 360, 384 (1997) ("Leonardis II")). Thus, on appeal, this Court reviews PTI decisions with "enhanced deference." State v. Brooks, 175 N.J. 215, 225 (2002). A defendant seeking to overturn rejection from PTI must "clearly and convincingly establish" that the decision rejecting his or her application was "a patent and gross abuse of discretion." State v. Watkins, 193 N.J. 507, 520 (2008). If a defendant rejected for PTI can prove that the denial "(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors,

9

or (c) amounted to a clear error in judgment[,]" then an abuse of such discretion would "be manifest."  Bender, supra, 80 N.J. at 93.

### A.

As his first legal argument, defendant contends that the presumption expressed in Guideline 3(i) to deny PTI in situations of deliberate violence conflicts with the PTI statute, N.J.S.A. 2C:43-12(e).[4]  He asserts that the statute only makes the "nature of the offense," see N.J.S.A. 2C:43-12(e)(1), and whether the offense is of "an assaultive or violent nature," see N.J.S.A. 2C:43-12(e)(10), mere factors in the overall analysis having no inherent greater importance than other factors.  He argues that the statute, in this sense, "preempts" the presumption against PTI set forth in Guideline 3(i) for situations of deliberate violence. We disagree.

There is no irreconcilable difference between the provisions in the Guidelines and in the statute.  The Guidelines are simply an effort to articulate considerations that were later codified in the statute.  For nearly three decades, PTI has been governed simultaneously by the Rule and the statute which "generally

---

[4] Although this general point was not argued below, we choose to reach it, and other issues defendant failed to raise in the trial court, in our discretion.  Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

10

mirror[]" each other. <u>Watkins</u>, <u>supra</u>, 193 <u>N.J.</u> at 517 (quoting <u>Wallace</u>, <u>supra</u>, 146 <u>N.J.</u> at 582). "[N]owhere does the statute attempt to instruct the prosecutor on the relative weight to be assigned [the] several criteria." <u>Wallace</u>, <u>supra</u>, 146 <u>N.J.</u> at 585.

Although Guideline 3(i) sets forth a presumption, that presumption can be overcome. Thus, while couched in terms of a "presumption," the Guideline is not a mandate. Rather it is only a vehicle to "elaborate[] upon statutory criteria," while still vesting ultimate decision making authority in the prosecutor. <u>Wallace</u>, <u>supra</u>, 146 <u>N.J.</u> at 586.

Defendant's reliance on <u>State v. T.A.B.</u>, 228 <u>N.J. Super.</u> 572 (Law Div. 1988), is inapposite. In <u>T.A.B.</u> there was a direct and inevitable conflict between the PTI court rule and the PTI statute. The rule provided that PTI should be limited to one year; the statute extended the period to three. <u>T.A.B.</u>, <u>supra</u>, 228 <u>N.J. Super.</u> at 574-77. The Law Division held that there was an obvious direct conflict in that instance and that the rule should yield. <u>Ibid.</u> Here, no such direct conflict is present. The presumption in Guideline 3(i) is not irrebutable and may be surmounted by offsetting considerations that favor a defendant's admission to PTI.

11

It is also significant that Guideline 3(i) and the seventeen statutory criteria for PTI have coexisted for about thirty years. Indeed, Rule 3:28 predates the PTI statute by about two years. Compare Pressler & Verniero, supra, Guideline 3(i) to R. 3:28 at 1169 (approved on September 8, 1976), and N.J.S.A. 2C:43-12 (passed in 1978 and effective September 1, 1979); see also The New Jersey Code of Criminal Justice:  Report on S. No. 738 before the S. Judiciary Comm., 1978 Leg. (1978) (recognizing that "[p]retrial intervention programs are currently operating in New Jersey pursuant to court rule").

As a well-established principle of statutory interpretation, "the legislative branch is presumed to be aware of judicial constructions of statutory provisions." State v. Singleton, 211 N.J. 157, 180 (2012).  Moreover, in the context of judicial interpretation of existing statutes, such "legislative retention of judicially construed language signals an agreement with the language, as construed." State v. Fielding, 290 N.J. Super. 191, 193-94 (App. Div. 1996); see also State v. Frye, 217 N.J. 566, 580 (2014) (recently applying this principle in the context of the Legislature's presumed awareness of case law interpreting the DWI statutes).

"There is a well-accepted principle that the practical administrative construction of a statute over a period of years

12

without interference by the [L]egislature is evidence of its conformity with the legislative intent and should be given great weight by the Courts."  Body-Rite Repair Co. v. Dir., Div. of Taxation, 89 N.J. 540, 545-46 (1982) (quoting Automatic Merchandising Council v. Glaser, 127 N.J. Super. 413, 420 (App. Div. 1974)); see also A.Z. ex rel. B.Z. v. Higher Educ. Student Assistance Auth., 427 N.J. Super. 389, 401 (App. Div. 2012) (same).

Here, the continued application of Guideline 3(i), which has been in force, essentially unaltered, for decades, neither leads to an absurd result nor frustrates the presumed legislative intent. In effect, Guideline 3(i) does no more than "channel prosecutorial discretion" in a manner that leaves the ultimate responsibility on the prosecutor to "weigh the various factors and to reach a determination."  Wallace, supra, 146 N.J. at 586.  We recognize that the Guidelines were initially adopted before the PTI statutory factors were codified.  Even so, the Legislature's failure to repudiate Guideline 3(i) in its 1978 enactment, and its subsequent inaction leaving the Guideline intact, provides some indication that the Legislature does not perceive the Guideline to be inconsistent with the statute.

Guideline 3(i) and the PTI statutory provisions have been in place for decades without the disharmony alleged by defendant being identified as a problem, let alone a recurring one.  We

13

discern no conflict between that Guideline and the overall statutory framework.

B.

On a related theme, defendant also generically contends that the judicial review standard of a "patent and gross abuse of discretion," which the Supreme Court endorsed in Leonardis II, supra, 73 N.J. at 381, in 1977, should be modified for situations like the present one where the prosecutor has overridden a positive recommendation from the PTI program director. The State responds that it would usurp the prosecutor's Executive Branch powers to require greater consideration of the views of a PTI program director, who is employed by the Judicial Branch.

Without resolving this separation-of-powers question, we note that defendant's request to not employ the highly deferential PTI standard of review where the prosecutor's PTI decision disagrees with the PTI program director's recommendation is, in essence, a policy issue. That policy issue is for the Supreme Court and the Legislature to evaluate in their respective policymaking roles. It is beyond our role as an intermediate appellate court to decide the policy issue. State v. Hill, 139 N.J. Super. 548, 551 (App. Div. 1976) (noting the limited functions of an intermediate appellate court). There is nothing presently in the Guidelines, the PTI statute, or the Supreme Court's case law dictating that

14

greater deference must be accorded to a program director's recommendation to approve a PTI application. We therefore decline defendant's invitation to endorse this new principle.

## C.

In another general argument, defendant contends that, in certain rare cases, such as this one, the trial court should conduct an evidentiary hearing where the underlying facts that affect a defendant's suitability for PTI have been disputed. The State opposes this contention, noting that if such hearings were required they would have the undesirable capacity to convert PTI rejections into "mini-trials."

We reject defendant's claim of entitlement to an evidentiary hearing. As a practical matter, we agree with the State that requiring such hearings, even in limited instances, will unduly thwart the prosecutor's discretionary functions in deciding whether to approve PTI for a particular defendant. Such fact-finding excursions before the trial court also would delay and bog down the efficient disposition of PTI applications and any related plea negotiations that might be occurring. The hearings would also force the State's fact witnesses to bear the burdens and inconvenience of an additional testimonial appearance in the case if PTI is not granted. We discern no constitutional or statutory right to such an evidentiary hearing.

15

This is not to suggest that, when reviewing a PTI application, a prosecutor has the prerogative to completely disregard evidence proffered by an applicant that bears upon the applicable factors under the Guidelines and the PTI statute. Cf. State v. Hogan, 144 N.J. 216, 236 (1996) (analogously noting, in the context of grand jury presentations, a prosecutor's responsibility to not overlook evidence that is "clearly exculpatory" or that "directly negates the guilt of the accused"). A prosecutor is certainly free to disbelieve statements presented by defense witnesses and to instead credit the anticipated contrary testimony of the State's witnesses. Even so, the prosecutor should be expected, in the appropriate exercise of his or her discretion over PTI that is subject to judicial review, to examine all pertinent facts and evidence presented bearing on the PTI criteria, including the "nature of the offense," N.J.S.A. 2C:43-12(e)(1), and the "facts of the case," N.J.S.A. 2C:43-12(e)(2).

If there is a question of credibility to be resolved concerning the fact witnesses, the occasion for resolving that question is at trial, not in a preliminary hearing before the trial court when it is reviewing a prosecutor's PTI denial. See Nwobu, supra, 139 N.J. at 252 (noting that "appropriate administration of the [PTI] program militates against basing enrollment upon the weight of the evidence of guilt" (citation

16

omitted)).  Nor should such a hearing be provided as a tactical exercise for defense counsel to obtain testimony from the State's witnesses that might be later used for impeachment purposes at a future trial.[5]

In sum, we reject defendant's contention that the trial court was obligated to conduct an evidentiary hearing to resolve whether his own competing narrative of the events (and that of his two proposed witnesses) is more credible than the version of the facts provided by the police officers.  We agree with the State that such a "mini-trial" would not have been appropriate.

### D.

Apart from these general legal arguments, defendant asserts that the prosecutor's specific decision in this case to deny him PTI was a "patent and gross abuse of discretion."  Watkins, supra, 193 N.J. at 520.  We concur with the trial judge that defendant has failed to sustain his heavy burden of establishing such an extreme abuse of the prosecutor's prerogatives.

Despite defendant's alternative version of the facts, there is ample evidence to support the presumption of PTI denial in Guideline 3(i) for acts of "deliberate" violence.  It is undisputed that, at a minimum, some form of struggle between defendant and

---

[5] We make this observation generically, as no such objective by defendant's counsel in this case is apparent from the record or the briefs.

17

the police officers took place. The police officers asserted that defendant assaulted them deliberately. Defendant asserted it was accidental, but the prosecutor did not have to accept his claim. The prosecutor could believe defendant's action was deliberate, even though N.J.S.A. 2C:12-1(b)(5)(a), one of the charged offenses at issue here, also encompasses knowing, reckless, and certain negligent conduct. Moreover, the prosecutor's decision to deny PTI cannot be invalidated by subsequent events, namely that defendant later pled guilty only to resisting arrest with a recommendation of probation.

Although defendant certainly has several mitigating factors in his favor, including such things as his relative youth, his lack of a prior criminal conviction, his high school education, his employment, and his apparent lack of past violent behavior, the prosecutor sufficiently took those positive traits into account in weighing the PTI criteria. The prosecutor also was entitled to consider, on the other side of the ledger, the evidence indicating that defendant disregarded the commands of police officers who were responding to a volatile street brawl, assaulted two of those officers, and broke the nose of one of the officers while resisting them.

As the trial judge reasonably concluded, the prosecutor's amplified letter adequately responded to the court's initial

18

concerns about the completeness and clarity of the reasons for PTI rejection expressed in the prosecutor's initial denial letter. The prosecutor's analysis in the second letter is sufficiently cogent and grounded in the facts and the applicable PTI standards to be upheld, even though reasonable minds might differ as to whether defendant is a suitable candidate for admission into the program.

Lastly, we reject defendant's contention that the prosecutor engaged in impermissible "double-counting" by referring multiple times to the violent aspects of the facts within his analysis. Even assuming for the sake of discussion that double-counting principles can apply to PTI analyses, the prosecutor appropriately referred to the State's version of the facts where those facts were relevant to the applicable PTI factors. The facts certainly can be discussed more than once within a PTI denial letter, insofar as they may bear on the discrete criteria for eligibility.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19