**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2911-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBBI L. ROSE,

    Defendant-Appellant.

_____

Submitted June 4, 2025 – Decided July 28, 2025

Before Judges Currier and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 23-08-0858.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Nadine Kronis, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Elizabeth K. Gibbons, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals her five-year probationary sentence, entered on May 13, 2024, following her negotiated guilty plea to third-degree theft. We conclude the trial court did not misuse its discretion and affirm.

In addition, defendant appeals from the trial court's order of May 17, 2024, denying her motion for admission into the Pre-trial Intervention Program (PTI).[1] Because we conclude the prosecutor did not clearly and convincingly commit a patent and gross abuse of discretion in denying the application, we affirm.

On October 24, 2022, a criminal complaint was filed against defendant alleging she committed the offense of theft "while acting in her capacity as an office manager, paying herself for time which she did not work and by issuing business checks to herself which she negotiated into her personal bank account totaling $61,385.85." According to the affidavit of probable cause, "defendant paid herself . . . $3,784[] for time in 2021 and $3,074.50 for time in 2022. Additionally, $54,527.35 worth of business checks were fraudulently paid to . . . defendant." The affidavit states "defendant provided a full confession." A one-count indictment was returned against defendant alleging third-degree "theft by unlawful taking/disposition-moveable property," N.J.S.A. 2C:20-3(a).

---

[1] See N.J.S.A. 2C:43-12 and R. 3:28-1 to -10.

In April 2023, defendant applied for PTI. The Criminal Division Manager (CDM) "guardedly recommend[ed] her enrollment."[2] However, on July 20, 2023, the prosecutor advised it would not consent to defendant's admission into PTI. In considering the factors under N.J.S.A. 2C:43-12(e),[3] the prosecutor stated:

> [(1), (2)] [T]he nature of the instant offense and the facts of this case. . . . [T]he total amount of the theft and the number of individual transactions [occurred] over a [two and a half-year] period—each of which she knew was wrong—cause this office to reach the conclusion PTI should be rejected.
>
> [(3)] [A]ge and motivation. . . . Defendant is a 53[-]year-old female who consumes alcohol daily. . . . [Defendant] stated that, due to self-reported past trauma and some potential un-diagnosed mental illness, she self-medicated with excessive shopping and alcohol consumption. [Defendant] is irresponsible with money and cannot resist her urge to spend. She reported that she would reach the spending limit on a credit card and then open a new account on another card. Instead of seeking help, she ran up her credit card bills, thus going into debt. It is unlikely that, given her age, level of debt and employability (even without conviction), she will ever be able to pay all the restitution owed.

---

[2] Under Rule 3:28-3(d), the CDM evaluates the application "and make[s] a recommendation to the prosecutor."

[3] The assessment of a defendant's suitability for PTI is based on factors set forth in N.J.S.A. 2C:43-12(e) and Rule 3:28-4(b).

A-2911-23

[(4)] [T]he desire of the victim to forego prosecution when considering a defendant's eligibility for the PTI program. In this case, [the victim], . . . has expressed his adamance . . . that he opposes [defendant]'s admission to the PTI program.

[(8)] [S]he has had prior contact with the criminal justice system that gives the State concern as to the extent to which her series of thefts constitute part of a continuing pattern of anti-social behavior. . . . [S]he has had a total of six other incidents involving allegations of harassment, disorderly conduct and simple assault between 2006 and 2023. This series of involvement in the legal system suggests a pattern of disregard for the law.

[(7),(14)] [A]dmission to the PTI program would dimmish the nature of [defendant]'s systematic embezzlement of over $60,000, a crippling figure to a privately held corporation, relative to the public's need for prosecution of these types of crimes. This need for prosecution outweighs any value of supervisory treatment the PTI program would foster since she will have access to the same supervisory programs during a potential period of probation following conviction for theft.

[(17)] Taking all these factors into consideration, the facts of this case and the defendant's failure to address her underlying issues, the State submits that the harm done to society by abandoning such prosecution would be outweighed by the opportunities provided by the PTI program. . . .

The State understands [defendant]'s crime is not violent in nature and that it may be related to conditions or situations conducive to change through participation in the supervisory treatment afforded by admission to

4

the PTI program (N.J.S.A. 2C:43-12(e)(5), (6), (9), (10), (11), (12), (13), (15) and (16)). The factors applied by the State, as noted above, outweigh these mitigating factors. . . .

Defendant appealed the prosecutor's denial of admission to PTI. On November 13, 2023, the court heard the parties' arguments. The court remanded the matter to the prosecutor for further consideration. The court stated:

[W]hile denying PTI under factor 8, the State relied on . . . defendant's prior dismissed criminal indictment. To consider previously dismissed charges in a PTI application K.S.[4] requires that the reason for consideration of this factor must be supported by undisputed facts of record or facts found at a hearing. In this case there was neither undisputed facts of record nor a hearing. Therefore, [the prosecutor]'s reliance on this factor was erroneous.

Additionally, the State asserted that factors 9 through 13, 15 and 16 were irrelevant in their response. However, in [its] initial rejection letter the State conceded that these factors favored the defendant's admission into PTI, yet weren't of sufficient weight to merit and allow[] her entry into the program.

Now, this [c]ourt must afford the State . . . wide discretion. While it appears that the State originally considered factors 9 through 13, 15 and 16 without explanation, the State now characterizes these factors as irrelevant in their response brief. These factors aren't irrelevant. If the defendant is not involved with another defendant that's a factor that might [i]nure to her benefit. If she's not involved in organized crime that's

---

[4] State v. K.S., 220 N.J. 190 (2015).

a factor that may [i]nure to her benefit. That doesn't necessarily mean she gets into the program, but the prosecutor has an obligation . . . to account for these factors and weigh these factors and determine . . . what effect those factors have on the . . . overall evaluation.

So the prosecutor here needs to reconsider defendant's application and explain why the PTI factors that essentially he found irrelevant . . . why they don't undermine the factors that he points to that favors denial of his application. So there's a weighing process I think the prosecutor at this point hadn't fully engaged. We need to . . . have an assessment as to how much weight the prosecutor is giving to those factors because in the initial . . . denial letter he considered them. He didn't explain them but he considered them and said . . . the factors that support her denial outweigh . . . those factors, but then we kind of get a reversal in his reply brief . . . and said no, they're irrelevant now. And so it makes it very unclear to me whether the prosecutor fully engaged in the appropriate assessment of all the factors.

On December 12, 2023, the prosecutor submitted an "updated statement of facts and procedural history." The statement provides the prosecutor's analysis of the following N.J.S.A. 2C:43-12(e) factors:

8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior. The State has reviewed . . . K.S. . . . and concludes that this factor favors defendant. Her prior involvements with the legal system are not "violations" because they were dismissed.

9) The applicant's record of criminal and penal violations and the extent to which [s]he may present a

6

substantial danger to others. [Defendant] does not have a history of "violations" as her past conduct did not result in convictions. Further, there is no evidence that [defendant] presents a substantial danger to others. The current charges against her are of a non-violent nature. This factor favors defendant.

10) Whether or not the crime is of an assaultive or violent nature . . . . This factor favors defendant as there is no allegation of violence attached to the current charge on this indictment.

11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act. The State has reviewed the treatment records . . . for treatment received between October 17, 2022 and November 8, 2022. For reference, the indicted theft crimes had a date range beginning [two-and-a-half] years prior to this treatment and was reported to police on October 24, 2022. The "Summary of Assessments" on page 16 of the records indicates that [defendant] discussed how addiction has affected her life. A psychiatric evaluation was conducted on October 20, 2022 . . . . Her position in the field of psychiatry is not referenced in the report. The report included in the supplied materials, starting on page 17, notes diagnoses of alcohol use disorder, GAD (generalized anxiety disorder) and MDD (major depressive disorder). There is no description of diagnostic testing applied, rather, it appears these diagnoses were arrived at based largely on patient self-reporting. Nevertheless, it is the State's position that prosecution of the charged crime would not exacerbate the social problem(s) faced by [defendant] to an extent beyond that of any other person with alcohol addiction, anxiety or depression who is charged with a crime. Therefore, this factor does not favor defendant.

7

12) The history of the use of physical violence toward others.  As noted, the current charge is non-violent and [defendant] has no documented violations involving physical violence towards others.  This factor favors defendant.

13) Any involvement of the applicant with organized crime.  There is no evidence that defendant is involved with organized crime.  This factor favors defendant.

15) Whether or not the applicant's involvement with other people in the crime charged or in other crime . . . .  There is no allegation that there were other people involved in the crime charged, therefore, this factor favors defendant.

16) Whether or not the applicant's participation in [PTI] will adversely affect the prosecution of codefendants.  This factor favors defendant.

In addition, the prosecutor explained in "its July 20, 2023 PTI rejection letter, the State was guided by . . . N.J.S.A. 2C:43-12(e)(1-7, 14 and 17)."  Further, the prosecutor's "position remain[ed] that factors 1-7, 14 and 17 outweigh the factors that in any way favor . . . defendant's admission to the PTI program."

On January 18, 2024, the parties returned to court for further argument and the court considered the additional submissions.  The court stated:

> [I]n it[]s most recent submission the State concedes that factors 8, 9 and 10, 12, 13, 15, 16 favor the defendant, but ultimately the prosecutor determined and continues

to maintain defendant is not a suitable candidate for PTI. While this defendant is remorseful, frankly, simply being a first-time offender who admitted or accepted responsibility for the crime . . . is not enough. The fact that restitution would become more difficult with a conviction is also not sufficient and defendant has submitted no case law supporting the relevance of this factor.

Regarding factors 1, 2 and 3, defendant forged here more than 25 business checks and created multiple fictitious invoices as part of an elaborate scheme to embezzle money continuously and systematically from her employer. These actions are not consistent with an otherwise law-abiding citizen who merely slipped up as suggested by the defense. Instead, these actions demonstrate an ongoing conscious disregard for the property, rights of others, the laws of our state and the . . . expectations of someone living in an orderly society. While her medical records might indicate that she suffers from some sort of mental illness, defendant has not presented evidence that anything other than greed motivated her behavior.

As to factor 4, this victim here, who appears to be a small business owner, is staunchly and adamantly opposed to defendant's admission into PTI.

With respect to factors 7, 14 and 17, the State asserts that the need to prosecute individuals who commit crimes like . . . defendant outweighs any value which supervisory treatment like PTI would provide defendant. In making its assessment the prosecutor did not here clearly abuse his discretion, something that Bender[5] requires before a reversal of a prosecutor's denial decision.

---

5  State v. Bender, 80 N.J. 84 (1979).

In its most recent submission, the State concedes factors 8, 9, 10[,] 12, 13, 15 and 16 favor . . . defendant. As to factor 11, the . . . prosecution of defendant would not exacerbate any social problems which defendant faces, namely, alcoholism, anxiety and depression. That assessment does not constitute a clear error of judgment as required by Bender.

The State here has now considered all relevant factors, hasn't considered any irrelevant factors and in my estimation did not commit a clear error in judgment. As a result, there is no evidence that would warrant this [c]ourt finding a patent and gross abuse of discretion. Therefore, defendant's appeal of her PTI denial . . . is denied.

On February 1, 2024, defendant entered a guilty plea "to the charge of third[-]degree theft." In exchange for the plea, the State agreed to "recommend probation without any jail [time] but . . . conditioned on restitution." The issue of restitution would be subject to an ability to pay hearing.

On May 13, 2024, defendant returned to court for sentencing.[6] Defense counsel argued for mitigating factors (4), (6), (7), and (10).[7] In addition, counsel

---

[6] When imposing a sentence of imprisonment, a sentencing "court shall consider the following aggravating circumstances," N.J.S.A. 2C:44-1(a)(1)-(15); and "may properly consider the following mitigating circumstances," N.J.S.A. 2C:44-1(b)(1)-(14).

[7] N.J.S.A. 2C:44-1(b)(4), "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense."

A-2911-23

requested the court consider "non-statutory" mitigating circumstances in that defendant had "remorse"; was "sorrowful"; and understood she betrayed her employer's trust and could not be "more sorry." Counsel stated "a large part of the reason why [defendant] did what she did had to do with mental illnesses." Counsel stated it had "been suggested that [defendant] had bipolar [dis]order" and "a serious alcohol dependency." She noted in defendant's PTI interview, defendant "stated [she] may suffer from an illness [she] was never diagnosed with." Counsel further stated defendant's treatment efforts were unsuccessful because defendant could not make payment.

The prosecutor noted that defendant did not take the money to "pay[] for her mental healthcare or medical care [and] she did not use that money to get herself help." Further, "[h]ad she been using this money to help herself medically and mentally during the time she was taking it perhaps the State would

---

N.J.S.A. 2C:44-1(b)(6), "[t]he defendant has compensated or will compensate the victim of the defendant's conduct for the damage or injury that the victim sustained, or will participate in a program of community service."

N.J.S.A. 2C:44-1(b)(7), "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense."

N.J.S.A. 2C:44-1(b)(10), "[t]he defendant is particularly likely to respond affirmatively to probationary treatment."

have taken a different position." Instead, the prosecutor noted, and defendant admitted, she used the money to maintain a lifestyle.

The prosecutor requested the court to consider aggravating factor (9).[8] The prosecutor argued mitigating factors (4) and (6) did not weigh in defendant's favor but conceded to factors (7) and (10).

The court noted defendant "claim[ed] that she suffers from depression, that there's mental health illness in her family, that she also has a substance abuse issue related to alcohol." The court found aggravating factors (3),[9] (4),[10] and (9). The court did not find mitigating factor (4), but found mitigating factors (6), (7), and (10). In addition, the court found defendant "expressed genuine remorse" and "seems to have . . . a positive attitude" so it "g[a]ve her the benefit of . . . that non-statutory mitigating factor." The court determined "the aggravating and mitigating factors [we]re in balance." The court further noted

---

[8] N.J.S.A. 2C:44-1(a)(9), "[t]he need for deterring the defendant and others from violating the law."

[9] N.J.S.A. 2C:44-1(a)(3), "[t]he risk that the defendant will commit another offense."

[10] N.J.S.A. 2C:44-1(a)(4), "[a] lesser sentence will depreciate the seriousness of the defendant's offense because it involved a breach of the public trust under chapters 27 and 30 of this title, or the defendant took advantage of a position of trust or confidence to commit the offense."

"[t]here [wa]s a presumption against imprisonment and this [wa]s a negotiated plea" which the court was willing to accept.

The court sentenced defendant "to probation for a term of five years." Among other terms, the court required defendant to pay $5,036.50 in restitution to the employer and the employer's insurance company that paid the claim for the theft.

On appeal, defendant raises the following arguments for our consideration:

> POINT I.
>
> THE PROSECUTOR PATENTLY AND GROSSLY ABUSED HIS DISCRETION BY WEIGHING FACTORS SUPPORTING [DEFENDANT]'S ADMISSION INTO PTI AGAINST HER AND BY CONSIDERING INAPPROPRIATE FACTORS IN REJECTING HER FROM PTI.
>
>> A. The prosecutor improperly failed to consider [defendant]'s amenability to treatment and rehabilitation as a factor warranting her admission into PTI.
>>
>> B. The prosecutor inappropriately considered [defendant]'s likely inability to pay $61,385 in restitution as a factor weighing against her admission into PTI.

13

POINT II.

RESENTENCING IS REQUIRED BECAUSE THE COURT FAILED TO FIND TWO APPLICABLE MITIGATING FACTORS AND FAILED TO CONSIDER [DEFENDANT]'S POST-OFFENSE REHABILITATION EFFORTS.

I.

Defendant argues "the prosecutor's denial of [her] PTI application was a patent and gross abuse of discretion, this [c]ourt should reverse the decision of the trial court, vacate [her] conviction, and order her admission into the PTI program." She contends the prosecutor "failed to conduct an individualized assessment . . . and [consider] her amenability to rehabilitation."

Defendant asserts the prosecutor engaged in a "completely inappropriate reading of N.J.S.A. 2C:43- 12(e) factors (5)[11] and (6),[12] . . . [and] determined

---

[11] N.J.S.A. 2C:43-12(e)(5),

> [t]he existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment.

[12] N.J.S.A. 2C:43-12(e)(6), "[t]he likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment."

that the need for prosecution outweighed the value of supervisory treatment." She contends the prosecutor made an "irrelevant and unfounded assumption that the same treatment services would be available to her on probation." Moreover, she argues initially "the prosecutor found that statutory factors [N.J.S.A. 2C:43-12(e)](5) and (6) were mitigating factors" but then "inexplicably changed his position."

Defendant relies on State v. Negran, 178 N.J. 73, 78-79, 85 (2003), arguing there the "Supreme Court held that the prosecutor did not make an individualized assessment of the defendant where he failed to consider the defendant's voluntary entry into an alcohol abuse treatment program and continued participation in treatment as bearing directly on h[er] 'suitability to respond to short-term rehabilitation' on PTI." In addition, she relies on State v. E.R., 471 N.J. Super. 234, 246-47 (App. Div. 2022), for the proposition that a "prosecutor was required to consider the defendant's 'substantial progress toward rehabilitation' in the period following her offenses and to consider her ongoing mental health treatment as part of his assessment of her PTI application."

Moreover, defendant argues "[t]he prosecutor's analysis of [N.J.S.A. 2C:43-12(e)(11)[13]] was inadequate" when the prosecutor "reasoned that despite [her] diagnoses of alcohol use disorder, major depressive disorder, and generalized anxiety, those problems would not be made worse by prosecution 'to an extent beyond that of any other person with alcohol addiction, anxiety or depression who is charged with a crime.'"

Further, defendant contends the prosecutor "failed to explain why the additional mitigating factors that he found on reconsideration of [her] PTI application were still outweighed by the aggravating factors in the final analysis." Defendant asserts the prosecutor's "bare assertion" is insufficient.

Lastly, defendant argues "[t]he prosecutor's improper consideration of [defendant]'s inability to pay more than $61,000 in restitution to her former employer violated the established rules governing admission into the PTI program and constituted a patent and gross abuse of discretion." Defendant acknowledges "admission into PTI 'may be conditioned on restitution, [but] there must be a hearing to determine fair restitution . . . as well as defendant's ability to pay,'" citing RSI Bank v. Providence Mutual Fire Insurance Company,

---

[13] N.J.S.A. 2C:43-12(e)(11), "[c]onsideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act."

234 N.J. 459, 478-79 (2018). However, defendant contends N.J.S.A. 2C:43-12(a)(1) and Rule 3:28-5(d) "prohibit the State from denying PTI admission based on a defendant's inability to pay restitution." Moreover, defendant asserts "[t]he Rule . . . authorize[s] 'symbolic or partial restitution when appropriate to further rehabilitation' as a condition of PTI." Defendant contends the court "made the same errors" when it "determin[ed] that [her] likely inability to pay more than $61,000 in restitution was 'a really big factor' weighing against her admission into PTI."

The State contends "[w]hen the prosecutor . . . denied defendant's PTI application, he provided a written statement outlining his careful consideration of the facts of this case in light of the relevant law." Further, "the prosecutor soundly exercised his discretion when he denied defendant's PTI application."

In considering restitution, the State notes the prosecutor observed defendant's "spending habits, debt, and age of fifty-three" "meant that [defendant] would likely never be able to fully pay back what she stole." The State asserts this "observation . . . was part of an analysis of one factor, . . . not the 'basis of' the entire denial." Indeed, the State argues the prosecutor's analysis would have been incomplete had he ignored that "[d]efendant stole so much money that she will never in her life make enough to return it all."

As to factors N.J.S.A. 2C:43-12(e)(5) and (6), the State argues the prosecutor initially "declined to elaborate on his understanding of the factors." However, after remand, "he fully analyzed factors (5) and (6)" and "[a]fter full consideration, . . . found they opposed defendant's admission into PTI."

Further, the State distinguishes this matter from Negran, because here the prosecutor "consider[ed] defendant's alcohol problem and time in rehab, but found these facts did not overcome other facts favoring traditional prosecution." Moreover, the State distinguishes our opinion in E.R. by noting here "the prosecutor declined to rely on defendant's unconfirmed suspicion of undiagnosed mental illness." The State asserts the prosecutor could not "rely on . . . speculation [and make] baseless[] assum[ptions]."

As to factor N.J.S.A. 2C:43-12(e)(11), the State notes that "defendant has no definitive social problems that may have led to her crime." However, "regardless of whether . . . problems exist, prosecution of defendant's crime would not exacerbate her social problems 'to an extent beyond that of any other person' with the same issues charged with a crime."

The State contends the prosecutor's "careful consideration contradicts defendant's claim that the prosecutor merely made the 'bare assertion' that certain factors outweigh others."

Our PTI analysis starts with well-established law. "We must apply the same standard as the trial court. . . . [W]e review the . . . prosecutor's decision de novo." State v. Waters, 439 N.J. Super. 215, 226 (App. Div. 2015).

"PTI decisions are 'a quintessential[] prosecutorial function,' [therefore] our review of a prosecutor's denial of a PTI application is 'severely limited.'" E.R., 471 N.J. Super. at 244-45 (first quoting State v. Wallace, 146 N.J. 576, 582 (1996); and then quoting Negran, 178 N.J. at 82). Prosecutors are afforded "broad discretion to determine if a defendant should be diverted." Id. at 245 (quoting K.S., 220 N.J. at 199). Indeed, "[a] reviewing court must assume, absent evidence to the contrary, that the prosecutor's office has considered all relevant factors in reaching the PTI decision. This presumption makes it very difficult to reverse a prosecutor's decision on that basis." State v. Nwobu, 139 N.J. 236, 249 (1995). A "[d]efendant generally has a heavy burden when seeking to overcome a prosecutorial denial of his [or her] admission into PTI." State v. Watkins, 193 N.J. 507, 520 (2008).

Nevertheless, when "a 'reviewing court determines that the prosecutor's decision was arbitrary, irrational, or otherwise an abuse of discretion . . . the reviewing court may remand to the prosecutor for further consideration.'" E.R., 471 N.J. Super. at 245 (quoting K.S., 220 N.J. at 200). Alternatively,

19

a reviewing court may overturn a prosecutor's rejection of PTI when a defendant "clearly and convincingly establish[es] that the prosecutor's decision constitutes a patent and gross abuse of discretion." Watkins, 193 N.J. at 520, (citation omitted). A patent and gross abuse of discretion occurs when "the [PTI] denial: '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (quoting Bender, 80 N.J. at 93).

[Ibid. (alterations in original) (citation reformatted).]

In this second scenario, a defendant must show "that the prosecutorial error complained of . . . clearly subvert[ed] the goals underlying [PTI]." Id. at 246 (alteration in original) (quoting State v. Roseman, 221 N.J. 611, 625 (2015)). A defendant can only satisfy "this heightened standard upon establishing not only an abuse of discretion, but also that the prosecutor's decision 'ha[d] gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'" Ibid. (quoting Watkins, 193 N.J. at 520). If "a defendant can make that showing, a [reviewing] court may admit a defendant, by order, into PTI over the prosecutor's objection." Ibid. (quoting Roseman, 221 N.J. at 625).

We initially note the trial court remanded the matter to the prosecutor. Thereafter, the prosecutor provided a more robust analysis of the factors and the

trial court denied the motion for admission. Applying well-established law, we are not convinced defendant established the prosecutor's denial of her application for PTI was "clearly and convincingly . . . a patent and gross abuse of discretion." Watkins, 193 N.J. at 520. Instead, the record reflects the prosecutor, in detail, fully considered the evidence and the statutory factors. Recognizing our severely limited role, we discern no reason to override the prosecutor's decision.

## II.

As to her sentence, defendant argues "the court failed to provide any reasoning for its weighing of the aggravating and mitigating factors, and it erred in finding aggravating and mitigating factors without properly considering [her] post-offense conduct."

She contends "the trial court failed to consider [her] as she stood before the court on the day of her sentencing by declining to consider [her] participation in a three-week inpatient substance abuse treatment program, her ongoing efforts to obtain further treatment and rehabilitation, and her gainful employment." Instead, defendant asserts, the court "indicated that [it] believed that [defendant]'s post-offense treatment and ongoing efforts to seek treatment

21

had 'no bearing on her sentence today' because she did not seek treatment at the time of her offense."

Moreover, defendant argues, "[h]ad the court properly considered [her] post-offense conduct, it would have found mitigating factors [N.J.S.A. 2C:44-1(b)(8)] . . . and (9) . . ., and it would have given aggravating factors [N.J.S.A. 2C:44-1(a)](3) and (9) minimal weight."

Further, "[h]ad the court properly considered the statutory sentencing factors, it would very likely have sentenced [defendant] to a probationary sentence that was less than the maximum." Therefore, "resentencing is required because the trial court erred in its finding and weighing of the aggravating and mitigating factors and failed to consider [defendant]'s post-offense conduct."

The State counters that the trial court "appropriately exercised [its] discretion and sufficiently explained [its] reasoning in imposing defendant's sentence." Further, the State notes the sentence is entitled to a presumption of reasonableness because it was the result of a plea.

In addition, the State notes the court did not ignore defendant's post-offense conduct. The State contends that defendant's argument as to her ability to pay for treatment did not address "defendant's time in rehab." Also, the State argues the court considered defendant's post-offense conduct in applying the

22

non-statutory mitigating factors. Moreover, while noting defendant did not argue mitigating factors N.J.S.A. 2C:44-1(b)(8) and (9) to the trial court, the State contends those factors were inapplicable.

Our "review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). "A judge's discretion in that area is bounded by the law and court rules." Ibid. (quoting State v. Tedesco, 214 N.J. 177, 189 (2013)). "The reviewing court must not substitute its judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014).

Therefore,

> [t]he appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

A sentence imposed pursuant to a plea agreement is presumed to be reasonable because a defendant voluntarily "[waived] . . . his [or her] right to a trial in return for the reduction or dismissal of certain charges, recommendations

as to sentence and the like." Id. at 70-71 (alteration in original) (quoting State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980)).

After thoroughly reviewing the record and the parties' arguments, we are convinced defendant failed to establish the trial court misused its discretion in imposing the sentence. Not only was the sentence presumptively reasonable, considering the plea deal, the trial court's application of the mitigating and aggravating factors was based on competent evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2911-23